Case number 22-1946, United States of America v. Michigan et al., oral argument to be 15 minutes for appellant and 15 minutes shared by the appellees. Mr. Patterson for the appellant. I understand you're saving five minutes for rebuttal. Yes, your honor. Thank you. Good morning, your honors. May it please the court, Chris Patterson on behalf of the Coalition to Protect Michigan Resources. Our group includes sport fishing groups such as the Michigan United Conservation Club, the Hammond Bay Anglers, the Michigan Steelheaders, and the Michigan Charter Boat Association. Our group is particularly interested in intervening in proceedings that are occurring in the lower court related to the setting of a proposed decree that will control potentially for the next 24 years related to management and allocation of the fishery within the 1836 ceded territory. Mr. Patterson, one of the things that I'm interested in this case is that the district judge said your request to intervene wasn't timely. Your response is, well, the state changed its negotiating position or whatever it is and we didn't know they were going to do that, so it was timely. But to establish that, in a motion for reconsideration, you submit affidavits that seem to be and the state and the U.S. government understandably make a big deal of that in their responsive briefs, and you're just silent about that in the reply. So what causes you to believe so little to that argument that you don't even need to mention it? Your honor, I think that's because we did address it below with respect to oral argument as well as in the reply that occurred after our process of discussing the position before the lower court. So just to back up related to the confidentiality agreement, in our original motion that we filed, we were well aware of the paragraphs, I believe it's paragraphs 8 through 11, that do discuss particularly specific proposals or information that's been gleaned from the parties during the negotiation. And we cited a section in our original motion to intervene, bringing that issue to the lower court, saying that there are certain limitations that we have to sort of thread the needle in filing our motion. In response to going to oral argument, we had actually assembled most of our affidavits. We took them to the court hearing. It's in the transcript that we did ask at the outset of our argument if, understanding what we had filed in our motion and the responses that had occurred to that point, if the court would be willing to then accept them through a process that would sort of not have any issue. My question was, why don't you even discuss this in your reply brief? Well, because I think we don't think that the confidentiality agreement, those provisions, first, we don't think we violated it. We did address that. It's in the lower court record. And we also don't think that it's an issue. So it comes to the Court of Appeals, and because you made an argument below, you don't think you even have to mention it when you're at the standard below related to the court's ruling on timeliness. I thought below you said, look, we're just giving a general description of the negotiations. And then in your brief at pages 12-14 and 41, you give specific statements. So that seems to me not a general description, but specific statements. And they come back and say, look, this is a problem. And so, I mean, I was as perplexed as Judge McKeague as to why won't you at least I mean, tell us, what's the response to that argument? You still haven't given the response. Well, first of all, the provisions, the statements that we put in the brief were items that were already discussed in the public. There were status conference that were occurring before the court that were not sealed that were in open court. And it's consistently been our view that statements or even the specific events, we either don't believe that they violate the paragraphs 8-11, and we also there were status conferences occurring with the seven sovereigns along with us attending basically just as a public member. Those statements were made in open court. It was not a sealed record. So we took that position in the lower court, and we still, I guess, assume that or we didn't really think that their responses as to the I mean, we went to the lower court, we asked how should this be addressed, and it was that oral argument that the avenue for filing them under seal. We then filed our motion with seal as supporting our motion for reconsideration and our motion for state. So now before your honors, I mean, our position is... We don't really know what Judge Maloney thinks about that because he didn't say anything in his order. But if we were to send this back to him for some reason, would the breach of a confidentiality agreement by the party seeking either intervention as of right or permissive intervention, would that be a factor that he would be entitled to take into account? Actually, your honor, I think if you were to remand this case back for purposes of the lower court readdressing and allowing us, if we were to go back to the sort of proceeded sense we filed in July, it's unlikely that the discussions and the proposals that are subject to the confidentiality agreement are going to potentially be at play. Mr. Patterson, you may think my questions are stupid. I understand that. But I still get to ask them, and the idea is you're supposed to answer them. If this gets remanded back, would he be entitled to take into account, if he found that you violated the confidentiality agreement, would he be entitled to take that into account as to whether to let you intervene? Yes or no? Your honor, I would think no. I think that if the way the confidentiality agreement is read and we address this below, the remedy is not that the court would have to exclude the consideration of our information. The way that Rule 24A reads, there's no, at that sort of point of the process, I think the court could accept our affidavits under seal and use that information as a basis to address our motion. So not only are you saying the court wouldn't be entitled to take into account whether you violated the confidentiality agreement, the court would be obligated to consider the affidavits that at least everybody else says were in violation of the confidentiality agreement. Well, I certainly think that if we filed them... I understand that best defense is sometimes a good offense, but that one seems to go a little far. Well, your honor, I think actually with respect to the way that the lower court proceeded, what would potentially happen if we had filed our motions to seal, what has sort of now happened in proceedings below, certainly the other parties could have filed a motion to strike and the court could have decided, based on the merits in those motions to strike, that it wasn't even proper for them to be in the record. Instead, we filed them under a motion to seal supporting our pleadings, and in response to that, there were responses. The judge ultimately granted our motion, and I agree, your honor, that he didn't specifically look at the merits of them. He said, I'm going to grant the motion for purposes of sealing them so they're not available to the public. But I think if it were remanded, yeah, he could take into consideration the affidavits. If we filed them under a motion to seal and there was a motion to strike that was filed by the opposing parties, he could assess their arguments and decide whether he thought it was appropriate to strike them. All right. Thank you. So I think returning, there are three significant issues that I think with respect to the lower court's analysis aside from what has just been raised by your honors related to the confidentiality agreement. I think first, when the lower court looked at the timeliness factor, they assessed unusual circumstances for the extent that there are seven sovereign parties, and what we attempted to address is we do think that this is clear error of law based on circuit precedent. There's nothing in Rule 24A or nothing that's been decided in the Sixth Circuit that would suggest at the timeliness stage of deciding unusual circumstances that the sovereign status of the parties would militate against our ability to intervene. I think also consistent with the history of this case, it has been in front of the Sixth Circuit in the early 1980s. From a practical standpoint, why is the motion timely? It's at the very end when the district court thought that it was timely to decide whether they were on the eve of reaching a consent decree. I mean, just set everything else aside. How is that timely? Yeah, your honor, I think that's an excellent question. This circuit's cases in Janssen, City of Detroit, and Penick and Stotts, which we discussed in our briefs, I think the point of those cases is that the time is not when the coalition actually has substantial interest. We've never suggested that we haven't had an interest during the term of this litigation. What those cases point out is that the key is when we knew our interest was no longer being adequately represented or should have known. And what the court linked to was the court specifically looked at the fact and said, well, look, you knew when to file a motion to confirm your amicus status. And we did that to ensure, because of the sort of seven parties, there had been a change in leadership and representation, that we would get to continue to participate. Now, the lower court drew the line and said, well, look, at the time that you filed in 19, then you certainly could have also sought to intervene. Well, on my count, you filed seven prior motions to intervene. Is that accurate? Well, it's not us specifically, but there are members who, before they became a part of our coalition, a good example, like the NUCC, they filed in 1978. Did any of those list a conflict as the basis? Like, our view is different than Michigan's, so we need to intervene. Are you saying did any of those, did they argue on the basis of whether the state was adequately represented? Yes. Yes, they did. So how is this particular motion different than the earlier seven, in terms of your contention that the state is not adequately representing your interest? That's an excellent point, Judge McKeegan. I think it gets to, if you look at particularly the case the Sixth Circuit decided in 2005, when they look at the rights that were being alleged by the interveners, one of the things that the circuit said was, look, based on the fact that there's a broad, I see my time is up, if I could finish my response. What the circuit says is it says, look, at the time that the district court had bifurcated the case and they were looking at these broad declaratory legal issues, we're not willing to suggest that the state is not adequately representing your interest. But, as that decision has said, and as the decisions have consistently said that have addressed these intervention motions, there may be a time in some other phase of the case where it would be appropriate to intervene, that there's not representation. The difference here is that you are now in a remedial phase of the case. They are setting specific standards and a framework. At the beginning of this case, you moved to confirm your amicus status. And our case law says you can't take a wait-and-see approach. So you knew they weren't representing your interest in the past. Seven different times you thought as much. Yet, at the beginning of this, you said, no, we're sufficient as amicus. And that seems to be a wait-and-see approach. Now you think they're not representing your interest again. Let me clarify the record, Your Honor, on that point because I think it makes clear that's not the case. So with respect to the sort of two sort of intervening decrees that are being discussed, one, you have a discussion of treaty rights that exist in the Great Lakes. That is litigated in sort of the 1983 to 1985. It then gets reset for 20 years in 2000. And in 2005, the actual motions for intervention related to inland property rights and the decree that would establish there. So from 2000, there was a management framework that the coalition, our client, is extremely interested in protecting. When the negotiation started in 2019, we were not aware that the state was going to then abandon certain pieces of the 2000 framework. Like, for instance, in the 2000 framework, there's a hard line drawn as to where gillnets can exist. That is not going to be true in the new proposed decree that's existing below. So it's not, I mean, we had no knowledge, it wouldn't be accurate, that we thought the state would then turn our way. But wait a minute. The amount of fish that the Indian tribes can take out of the Great Lakes and the means of taking them out, gillnets versus another method, that's been an issue since back in 1973, isn't it? Yes, correct. The general legal issue has been at issue in this case. It was decided, at least as to the position under Noel Fox and in the Sixth Circuit's partial affirmance of his ruling, on the general treaty right. In the actual proposed decree, I mean, currently the case is not in a phase where we're litigating a general legal standard as to what the treaty does or does not provide. So when we say, the opposing briefs use the label litigation, litigation, litigation. Since 2019, it has been in a very non-adversarial negotiation phase. The seven sovereigns have been meeting, and according to our amici, our order that was issued, we're allowed status to observe. All of the framework that's being negotiated is specific provisions that affect specific units within the lake, including ports where our members fish. Now, as far as these specific concerns, and I think sometimes they're described maybe as local concerns in some of these pleadings, you have the opportunity to file objections to the proposed decree that ultimately got filed, right? Yes. And you filed those objections. Yes, we did, Your Honor. The Sioux Tribe has 110 objections or whatever it is, and you have 10, I think it is. And then Judge Maloney is going to take those up, I believe, on May 24th, right? Yes. So why isn't that, why isn't your ability to argue these positions where you say the state is not adequately representing you and it's going to harm the fisheries, why isn't that process that's laid out adequate? So the current process that's laid out, we filed our objections. Currently, there's a dispute in those objections in the lower court record as to first the standard that's going to apply that Maloney will use to rule upon what we submitted as our objection. So what will be the standard that he has to attest to as to setting a proposed decree in place? And with respect to the order that was issued, when we go to the lower court. So the standard would be different if you were a party than if you're, do you know that, than if you're an amicus? The standard will not be different, but the point will be that if we disagree with the standard that's applied, because there are sort of two issues. So you're talking about appellate rights? Correct. Cut to the chase. You're talking about appellate rights. Yeah. Any potential error that we would allege would be committed below in assessing our objections, we have sort of no remedy that's left. Potentially, the proposed decree could end. So the real reason, just hold on. The real reason you want to intervene, there's one reason. You want to have appellate rights. That's it. Well, originally, when we filed our motion in July, of course, we were aware that a proposed consent decree was going to be finalized and submitted. The other parties had suggested it would be done by the 30th. At oral argument, we thought that that was incorrect, which is one of the reasons we also filed the motion for reconsideration. In December, they then filed an actual proposed successor decree with six-party consent. And so since our motion to intervene has changed, I mean, the lower court has provided us this phase for objections. But if we're ruled against, then we have no other relief. And the state has filed objections or a response to our objections, saying why they're not appropriate to change the successor decree. So we don't feel like the state's going to represent us. So all of this has taken place now since these briefs were filed. So if we were to say that Judge Maloney was wrong and you should have been permitted to intervene under either of the standards, except for this question that Judge Tappara was teasing out about appellate rights, what would be different between now and the conclusion of the proceedings before the district court? When you say what would be different, what would be different that we would argue here or what would be different that will happen in the lower court? What would be different in the lower court? If we reversed Judge Maloney, for which we have to find an abuse of discretion, as I understand it, what would happen differently between now and when he rules on these objections? Between the time period of if you were to reverse him and rule on the objections, potentially there would be no difference. The difference will arise if he provides no deference or just overrules all of our objections and we think it's on an improper basis of law. And I think it's important to know that. So it's back to the appeal rights. All we would be preserving for you that you're concerned you won't otherwise have would be the ability to appeal as of right from whatever he decides on the consent decree. And one additional piece, not only... Is that a yes before you go to the additional piece? Yes. Yes, as to that. And the additional piece that, as you noted, there are appending motions filed by the Sioux Tribe. What the response of those will be and our ability to participate merely as amicus, the lower court has ruled in their order that... But Judge Maloney has been very receptive to you participating and presumably you could file a response brief as amicus to whatever they say, correct? Presumably we could. We have had our motions for leave denied before to file, but I don't disagree that he currently has provided us a process. The question is that we currently would have no ability to ensure that if we would argue that there were errors committed below, we have no way to protect... So it's appellate rights. Okay. We got it. Anything else? Okay. Thank you. You may proceed. Thank you, Your Honor. Good morning. May it please the Court. My name is Ben Richman. I represent the United States. So this is an appeal from the District Court's denial of intervention below in a long-running dispute over the scope of treaty fishing rights in the Great Lakes. And I just... Mr. Richman, let's just make this simple. Certainly. This plays out the way Judge Maloney has set forth in his order setting the stage for May 24th. At some point, he rules. Will you, on behalf of the United States of America, object if the coalition seeks to appeal that decision? My understanding is the coalition ordinarily, as an amicus, wouldn't have appellate rights here in the District Court proceedings. And I don't think an interest in having an appellate right is sufficient in and of itself. So the answer is yes, you would object to them being able to appeal. Yes. I don't want to foreclose. If the Asu tribe appeals, which seems fairly likely, given the scope of their objections, would you object to... If somebody else actually files the notice of appeal, would you object to the coalition participating as amicus in that? No. It's the position of the United States that we ordinarily agree to the filing of amicus briefs in an appeal.  The standard of review here on tiling this is an abuse of discretion. I know this court affirms the decision of the District Court. It need not go any further in the issues. What if someone learns of it? I mean, they're alleging they learned of Michigan not representing their interests at the 11th hour. What do they do in that circumstance? What if Michigan promises them all along and then all of a sudden completely abandons them? What do they do? So I think on these set of facts, what the government's position is, is the interests never change. They're the same here all along. On a different set of facts, Your Honor, perhaps if there was a material change in the interests of the parties, then... You concede it would be timely. Perhaps. Perhaps on a different set of facts there could be timely intervention, although there's still for it to intervene as of right three other factors which would have to be satisfied here. So if you learn that, or if the coalition learns of that in connection with one of these negotiating sessions, the state of Michigan says something that is a material change, using your phrase. But they learn it in connection with something that's subject to this confidentiality agreement. What's their remedy? So the coalition here, Your Honor, doesn't have a remedy because they bargained when they signed that confidentiality agreement. They bargained at arm's length to take part in this three years of confidential negotiations, and they got the benefit of participating in those negotiations. But if they hadn't agreed to it, you would have opposed them participating. Perhaps, Your Honor. Perhaps there could have been a different way to structure the negotiations here. So if the coalition hadn't... Negotiations in connection with these earlier extensions of this consent decree that goes back forever, were they also subject to confidentiality agreements, if you know? Your Honor, I don't actually know if the 2000 decree negotiations and the 1985 decree negotiations were subject to a confidentiality agreement, but I believe in similar cases involving treaty fishing rights in these long type of negotiations, there are usually confidentiality agreements barring disclosure of the contents of those negotiations. And that gets to the purpose of these negotiations. We want the parties to be able to negotiate in good confidence and have frank discussions and prevent courts from weighing in on the substance here during the negotiation proceedings. How do they make the argument, though, that Michigan doesn't represent their interests if they can't refer to the contents of those? And so I think that's unique to the situation here where they bargained to enter that confidentiality agreement. Perhaps, Your Honor, they could have described in a very general way divergences in interest if they were to arise. But they didn't do that here. On reconsideration, they submitted these affidavits which have actual statements from parties, from the contents of the negotiations themselves. I also want to get to the point, Your Honor, about substantial legal interests, another requirement for intervention here. The coalition has no property interests in the fishery. The state is the one with a property interest in the fishery as well as the tribes, their treaty right. So the coalition here, all of its permissions and ability to use the fishery resource are just solely derivative of the state. And that type of generalized interest, indistinguishable from the general public, just isn't sufficient for intervention as of right. And I think it's also important to talk about the sovereignty issue here. If the court doesn't want to take up the sovereignty issue in the tallyness analysis, it can certainly do so in the test for substantial legal interest. This litigation at bottom is about the interpretation of a treaty. The coalition here has no interest as a non-sovereign in the terms of that treaty. It wasn't a signatory to the treaty, like the United States and the tribes, and it doesn't have a property interest in the actual fishery itself, which could potentially be implicated by the scope of the treaty right. And the last point, Your Honor, I think is... I think you're probably technically true in that, but you can't live in Michigan like I do and not be aware of how important the fish stock in the Great Lakes is, not just to people who go out and fish, but the ports and everything that supports the ports. I mean, this is a big deal in the state of Michigan to protect these fish stock. And to say there's not a property right is, while it's probably technically correct, it seems to me at least this big deal, as I'm describing it, could be arguably sufficient for permissive intervention, couldn't it? Perhaps under permissive intervention, although this court reviews the district court's conclusions of permissive intervention as to... excuse me, for an abuse of discretion. And I think because of the timeliness here, this court should affirm the district court's decision on permissive intervention. And getting back to the substantial legal interest, Your Honor, in addition to these issues about the treaty right, the seven sovereign parties, which are in this litigation, the tribes and the state, carry a regulatory burden to enforce the decree. The actual terms of the decree would need to be enforced. And it's only the sovereign parties, not the coalition, that will have the responsibility of putting those terms of the decree into effect on the ground. The coalition's interest also would not be impaired in this litigation in the absence of intervention, and that's because, as we discussed before, the coalition's ample amicus rights. So throughout the negotiations here, the coalition has... The only thing that's impaired, they say, is their appellate rights. Why isn't that sufficient? Because if impairment of appellate rights alone were sufficient for intervention, that would mean that essentially the other parts of the rule wouldn't have any effect. The impairment of appellate rights alone just isn't that type of interest. It would allow any party potentially to intervene. What about their other argument that potentially they won't be able to respond to the tribe's objections? So the coalition has filed its own objections here. And, yeah, it could move for leave to file a response to those objections if it wished. But I think a lot of the contentions about the actual terms of the decree, which I think show that the objections here show that the amicus rights have been pretty extraordinary for the coalition here in the district court. But a lot of the substance of those objections do get to their issues with the Sioux tribe. And while they don't respond in a motion-response-reply type format, they are talking about the issues at bottom, which are in contention between the parties. And so because of those ample amicus rights, Your Honor, denying intervention does not impair the coalition's ability to protect its interests. One of the things that I'm curious about is let's assume that the district judge approves this proposed consent decree in the form in which it's proposed. One of the things the coalition says they're concerned about is this is the way in which the Indians are going to be permitted to fish, both in terms of quantity and the type, gill netting. It's going to deplete all the fish stock in the Great Lakes. Obviously, you don't know that until this new decree goes into effect. So I think there is a re-opener of some type in the consent decree, isn't there? Some people can come, parties can come back and say, hey, our assumptions and modeling was incorrect, and now we've got to change this. Yep, and their dispute resolution processes. All right. Does the coalition get to participate in that if they are still amici and not having been permitted to intervene? I would have to familiarize myself with the terms of decree, but I believe as users of the resource there would be an avenue there to participate in those processes about dispute resolution and the going management framework over the following 24 years. And so the last point, just quickly, I want to make your own... The reconsideration provision on page 61 says any party may request reconsideration of this decree, and party is defined on page 3 as, well, it goes on to say, does not include any person or entity granting amicus curiae status in this case. So it seems to envision that the amicus would not be able to come back and say, hey, everything that you were predicating this on didn't turn out to be right. So correct. For the reconsideration provision, the decree, the coalition here would not have an ability to reconsider. It has had full opportunities here to object as amicus, and it's filed those full substantive objections here. And I believe there are other dispute resolution processes within the management decree framework itself that the coalition... Other than reconsideration. Other than reconsideration that it could avail itself of. Like what? I'm sorry. So I believe that there... And so I would need to familiarize myself with the terms of the decree, but I believe there are processes for recalibrating different stock levels, for bringing different... And again, I'm sorry, I haven't familiarized myself with all those provisions, but this is an incredibly detailed decree. I mean, it runs, I think, over 60 pages. And I think that the terms of the decree itself show that if the court wants to reach the terms of the decree here and its decision, it shows that the state did bargain fiercely for its allocation of the fishery right, and the fishery is roughly allocated 50-50 here. We're not sure where the coalition got the 70 percent measure, but the terms of the decree itself do, that the proposed decree, do seem to show that the state adequately represented the coalition's interests. And so I want to allow, Your Honors, the state to speak more to the state's adequate representation of the coalition's interests. But again, I do want to emphasize that the materials the coalition is relying on here, it's not properly before the court on that point, and that's because of the confidentiality agreement and because it should have filed its affidavits in its original motion. We got that. Okay. So for these reasons, Your Honor, the court's denial of intervention should be affirmed. Thank you, counsel. Good morning, Your Honors. May it please the court, Assistant Attorney General Kelly Drake on behalf of the state of Michigan. I want to begin by noting that even though the state is on the opposite side of the V, as it were, from the plaintiffs in this case, we are aligned with the United States and the five tribes in the position that the coalition should not be granted intervention here. Can I ask, can you answer that last question? What can the coalition do if Michigan bargained away all the fish in the Great Lakes? What is their remedy? So I think in terms of the decree itself, there aren't a lot of remedies. It is the seven sovereigns who are entering into that decree as parties. As Judge McKeague pointed out, the reconsideration provision is limited to the parties. The implementation of the decree is limited to the parties. And I think a direct challenge to the decree itself would probably, for example, in state court would probably fail pretty miserably under the Supremacy Clause, since this will be a federal court order. So the coalition would have sort of indirect, I guess, ability to challenge kind of the implementation of the decree and the consequences of the decree through the political process, obviously. How can the political process help them? Once you've entered the decree, it's binding. And imagine the tribe takes all the fish. Okay, so they throw out the Michigan officials responsible, but the new officials are still bound by the decree. It's one of the problems with consent decrees, right? They seem to last forever. Sorry to interrupt. That's correct. The proposed decree has a proposed 24-year term. So the political challenges are, the political avenues are certainly limited. So what's the remedy then? I mean, first I'd point out that the hypothetical isn't accurate. We're not giving away all of the fish. The state of Michigan has not done that and, in fact, would violate significant legal duties that it has. The state of Michigan holds the Great Lakes and the fishery resource in trust for the benefit of the public. Okay, so they violate that trust. There's no remedy. The fish are gone. I think that's encompassed, though, in the review that Judge Maloney will do. So Judge Maloney or Judge Enslin, let's go back to Judge Enslin in 1985 and his review of that. Right, but that's why they want appellate rights. If he gets it wrong, they've got no remedy. So why not just let them intervene and it won't be any different than amicus, except they'll have appellate rights and they'll have the right to come back if the fish are depleted, which you say won't happen, so it's no problem. I don't know that it's accurate to say that the only difference would be appellate rights. Okay, so tell us. As far as they could file motions, they could, you know, their rights go far beyond the objection process that Judge Maloney. But Maloney's let them do a lot of things. It seems to me, what else would they have that would be nice to know? Because they say appellate rights and now we know reconsideration. What else would they have? Sure, so the Sioux Tribe, I believe Mr. Patterson referenced, the Sioux Tribe has filed multiple motions in the course of the past five months or so, even though Judge Maloney has set forth a process for considering the proposed degree and allowing the objecting parties to file objections and to have a hearing and all of that, that hasn't stopped Sioux Tribe from filing multiple motions in this case to try to change that process and even to try to get a trial on issues that are being resolved through the proposed decree, through a negotiated process. Nothing would stop the coalition from similarly filing motions and trying to bring issues before the court for trial that the six parties have agreed we don't want to have a trial on. We've reached a negotiated resolution on those. I see I'm out of time with my three minutes. The court has no further questions. Well, let me ask you the same question, Ms. Drake, as I asked Mr. Richmond, if I remember my own question correctly. I think it was, would you be opposed if the coalition sought to seek appellate review of the consent decree if Judge Maloney approves it? So obviously that would, as an assistant attorney general, I wouldn't necessarily be the one making the final decision on that, but I would expect the state would oppose them taking an appeal. But to follow up with the next question that you asked, Mr. Richmond, I don't think we would oppose them filing an amicus brief if the Sioux Tribe were to appeal. So you also haven't really, I don't think, directly addressed this contention that all of a sudden the state of Michigan reversed course and is now not adequately protecting the fishery resources in the Great Lakes. I mean, I don't expect you to be talking about what was said in negotiating sessions any more than you're complaining about your fellow lawyers doing that. But what is your position about whether something happened at the 11th hour that would make this timely, which is the whole argument being made by the other side? Sure, and you've hit the nail on the head with that, that we feel that they have violated the confidentiality agreement by bringing forward specific information about the negotiations and the state did not want to, didn't want to violate the confidentiality agreement and therefore had our hands tied in terms of trying to respond to that. But broadly speaking, what was happening at that point in the negotiations, the broad issues that the coalition has identified as being the issues where the state is not representing its interests had already mostly been resolved at that point. We were dealing with very specific issues regarding very specific areas that are of great importance to some of the members of the coalition and of great interest to them, but interest in terms of, gosh, that's where I fish and wouldn't I like what the state is doing, the things that the state is putting on the table, wouldn't I like them to do that differently? It had to do with positions that the state was taking in negotiations, it had to do with our negotiation strategy, not the big picture interest that they're claiming in terms of protection of the Great Lakes and protection of the fishery resource. So they've adequately or accurately described it as local concerns? I think that's accurate, but they're doing... Would I be correct in assuming that in any negotiation of this type that there's, obviously there are trade-offs, that's why you call it negotiations and you might trade off where you can put fishnets in the bay outside Rogers City for some other provision the state was more interested in? That's absolutely correct, Your Honor. The proposed decree is a series of compromises made by all seven parties sitting at that table. Certainly, if the state of Michigan were to put together a proposed decree that said what it wanted to say, it would look very different than the proposed decree that's in front of Judge Maloney right now, and I'm sure that's accurate for all seven parties. Thank you. Thank you. Thank you. Thank you, Your Honors. Your Honors, if I can briefly just address a few points. First, sort of historically, there was comments related to the 2000 decree and its provisions and potentially whether the coalition would have any recourse under the current new proposed decree. There actually was a provision in the 2000 consent decree that did allow for some local consultation and it did include the amici to be included among the other parties. Even that provision has been removed in the successor decree. Did you object to that omission in your objections? Yes, Your Honor. So that will be taken up. We don't know what Judge Maloney is going to do with that. Correct, Your Honor. We don't, and I think that addresses the other point, which is that currently, if the decree were to be entered, then our position is we know that the next route would potentially be that we would be appealing. Of course, if it's rejected, then I think whatever further proceedings are below, then we would want to represent ourselves based on our claims of the lack of adequate representation of the state. With respect to the rule about a bar as to the sovereign status of the parties, the court has let non-governmental entities intervene in other suits between governments. They did that in the United States v. City of Detroit, and then the Supreme Court, they took original jurisdiction over a case and allowed intervention of non-governmental entities in South Carolina v. North Carolina. And then I also want to point out, with respect to the lower court now appearing to follow the process that existed and very similar to the 1983 and 1984 motions that were done before Judge Enslin, during that time, especially even the MUCC and a predecessor of what's currently the coalition, had a label of litigating amici. So we actually participated during that phase of the case under a different standard, one that was much more adversarial, that did allow motions. I think that even in the lower court record, MUCC's counsel participated in depositions, etc. That status has sort of been abolished, hasn't it? Yeah, in a sort of similar name of cases, U.S. v. Michigan, I think it was around 1991 that that standard has gone. But I just... But Bansky called it a legal mutant. So I just point out the fact that our participation below was much more extensive and we were not prejudicing the result of that outcome. There was a 1985 decree that was reached. It was entered by the court. We didn't halt that process. And then I think... One of the things that I'm curious about, I mean, I realize that your group, you call this Coalition to Protect Michigan Resources. It's a combination of a bunch of different groups that have historically participated. But if the description in this material is correct, that the point of difference between the state of Michigan and the coalition got down to more the granular level at where you put gillnets and certain harbors and that kind of thing, if we said, yes, you can intervene, would I be correct if I'm extrapolating from that? That a group of fishermen in Charlevoix and Grand Haven and South Haven and all the other ports where there is both commercial fishing and recreational fishing, they would then have the same claim to intervene, would they not, that you do because the granular provisions in the decree about fishing outside that port is contrary to what they think is in the best interest of their ability to fish? So I think, Your Honor, it would depend on what you write in the opinion granting as intervention. But based on the way that we've provided in our motion, I don't think so. I think this is very similar to the comments that were made by the Sixth Circuit in the wineries of Old Mission Peninsula case, where ultimately our standard and our basis for intervention not only includes what we have sought to intervene on the interests of the fishery, but also our longstanding practice of being in this case since roughly 1978 or the late 70s. So I think we sort of have an interest that's particularly different because we're also asserting that we're trying to maintain, we sort of want to maintain the framework that existed that's currently now going to be subject to a successor decree. There are very limited parties that have participated as amici throughout the 40 years of this that are in any similar position than us. I also think that if any one of those groups did file a motion to intervene, then it would be correctly judged under 24A, and you would have to decide if they would be entitled to participate. I don't know just about them alone saying that they have a local interest that's different than the state is sufficient. They would have to still meet the rest of the factors, and this Court would have to find that all the circumstances that would potentially allow us intervention are the same for them. And I'm not sure because we're a very unusual party in this case. We're a proposed intervener. We've existed for a long time. We've participated in a very different basis. And then just last, I want to just comment on the confidentiality agreement. I want to return to that based on the comments that were made. The position that we have taken is that the statements that are in our actual motion are not proposals of the parties. And, of course, I understand the affidavits might be a different position of the Court. And I also, if I can finish, I see my time. You can finish. The other important thing to note is that there have been proposals that were filed in front of the lower court related to proceedings between a dispute on proposals to settle the area around the Grand Traverse Band. And, of course, those proposals were submitted. They must have been actual negotiation proposals, and they were ruled upon by the lower court without the same sort of arguments that we're now facing here. So thank you. I appreciate your time. Thank you, counsel. Your case will be submitted.